John K. Rubiner (SBN 155208)
JRubiner@fmglaw.com
**FREEMAN MATHIS & GARY, LLP**
1960 East Grand Ave., Suite 1260
El Segundo, CA 90245
Telephone:     213.615.7060

Nathan Schnetzler (Admitted Pro Hac Vice)_
nschnetzler@faplawfirm.com
**FRITH ANDERSON & PEAKE PC**
29 Franklin Road SW (24011)
P.O. Box 1240 (24006)
Roanoke, VA
Telephone:     540.725.3371

*Attorneys for Defendant*
WASHINGTON COUNTY SHERIFF'S OFFICE,
a public entity

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYCHELLE BLANDIN, individually, and as successor-in-interest to Mark Winek and Sharon Winek, deceased; B.W., a minor, by and through their guardian *ad litem*, Mychelle Blandin, individually and as successor-in-interest to Brooke Winek, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON COUNTY SHERIFF'S OFFICE, a public entity; ESTATE OF AUSTIN LEE EDWARDS, an estate; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.:  5:23-cv-02344<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY WASHINGTON COUNTY SHERIFF'S OFFICE**<br><br>Complaint Filed: November 16, 2023 |

Freeman Mathis
& Gary, LLP
Attorneys at Law

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Freeman Mathis
& Gary, LLP
Attorneys at Law

## <u>TABLE OF CONTENTS</u>

**I.  Statement of the Case** ...............................................................................1

**II.   Statement of *Alleged* Facts**.......................................................................1

**III. Argument & Authority** ...............................................................................3

   A.   The Court Should Dismiss the Washington County Sheriff's Office from this Action for Lack of Personal Jurisdiction.......................................................3

   B.   Standard of Review..................................................................................3

   C.   The WCSO is Not Subject to General Jurisdiction in California................4

   D.   This Court Does Not Have Specific Personal Jurisdiction Over the WCSO...................................................................................................5

   E.   The WCSO did not purposefully direct actions towards California. ..........7

   F.   There has been no intentional act by the WCSO aimed at California.........7

   G.   The WCSO did not cause any harm that it knew was likely to be suffered in California.............................................................................................8

   H.   Plaintiffs' claims do not arise out of or relate to any forum-related activities by the WCSO. ............................................................................8

   I.   The exercise of personal jurisdiction over the WCSO would be unreasonable. ...........................................................................................9

**IV. This Court Should Dismiss the WCSO for Failure to State a Claim....11**

   A.   Standard of Review................................................................................11

   B.   The WCSO is Not Liable for Edwards' Actions (Second & Third Claims for Relief). ............................................................................................12

   C.   Choice of law rules ...............................................................................12

   D.   Vicarious liability under California law .................................................12

**V.   Conclusion**...................................................................................................20

TABLE OF AUTHORITIES

**FEDERAL CASES**

Ashcroft v. Iqbal,
   556 U.S. 662, 678 (2009) ..................................................................... 15

Ballard v. Savage,
   65 F.3d 1495, 1500 (9th Cir. 1995) .................................................. 13

Bell Atl. Corp. v. Twombly,
   550 U.S. 544, 570 (2007) ..................................................................... 15

Burger King Corp. v. Rudzewicz,
   471 U.S. 462, 475 (1985) ............................................................... 11, 13

Core-Vent Corp. v. Nobel Industries AB,
   11 F.3d 1482, 1490 (9th Cir. 1993) .................................................. 15

Dole Food Co. v. Watts,
   303 F.3d 1104, 1111 (9th Cir. 2002) ................................................ 10

Dole Food Co.,
   303 F.3d at 1111 ................................................................. 12, 13, 14, 15

Erie R. Co. v. Tompkins,
   304 U.S. 64, 78–79 (1938) ................................................................... 16

Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,
   141 S. Ct. 1017, 1024–25 (2021) ....................................................... 10

Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.,
   880 F. Supp. 743, 751 (C.D. Cal. 1995) .......................................... 11

Int'l Aero Prods., LLC v. Aero Advanced Paint Tech, Inc.,
   325 F. Supp. 3d 1078, 1085 (C.D. Cal. 2018) ................................. 12

International Shoe Co. v. Washington,
   326 U.S. 310, 316 (1945) ....................................................................... 8

Iqbal v. Hasty,
   490 F.3d 143, 157 (2d Cir. 2007) ....................................................... 16

Freeman Mathis
& Gary, LLP
Attorneys at Law

Menken v. Emm,

   503 F.3d 1050, 1056 (9th Cir. 2007) ....................................................................8

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,

   243 F. Supp. 2d 1073, 1083 (C.D. Cal. 2003) ....................................................9

Morrill v. Scott Fin. Corp.,

   873 F.3d 1136, 1142 (9th Cir. 2017) ..................................................................12

Pebble  Beach Co. v. Caddy,

   453 F.3d 1151, 1155 (9th Cir. 2006) ....................................................................8

Picot v. Weston,

   780 F.3d 1206, 1211 (9th Cir. 2015) ....................................................................8

Ranza v. Nike, Inc.,

   793 F.3d 1059, 1068 (9th Cir. 2015) ....................................................................8

Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.,

   768 F.3d 938, 945 (9th Cir. 2014) ........................................................................6

Roth v. Garcia Marquez,

   942 F.2d 617, 624 (9th Cir. 1991) ......................................................................15

Schwarzenegger v. Fred Martin Motor Co.,

   374 F.3d 797, 802 (9th Cir. 2004) ................................................................10, 11

Scott v. Breeland,

   792 F.2d 925, 927 (9th Cir. 1986) ........................................................................8

Sher v. Johnson,

   911 F.3d 1357, 1360 (9th Cir. 1990) ....................................................................8

Sinatra v. Nat'l Enquirer,

   854 F.2d 1191, 1195 (9th Cir. 1988) ..................................................................11

Streit v. County of L.A.,

   236 F.3d 552, 565–66 (9th Cir. 2001) ................................................................14

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,

   551 U.S. 308, 322 (2007) ....................................................................................16

Freeman Mathis
& Gary, LLP
Attorneys at Law

iii

Van Ort v. Estate of Stanewich,
   92 F.3d 831, 840 (9th Cir. 1996) ........................................................................ 17

Walden v. Fiore,
   571 U.S. 277, 284 (2014) ...................................................................................... 11

Ziegler v. Indian River County,
   64 F.3d 470, 473 (9th Cir. 1995) ............................................................................ 9

**State Cases**

A.H. v. Church of God in Christ, Inc.,
   297 Va. 604, 629 (2019) ....................................................................................... 21

Alexander v. Cmty. Hosp. of Long Beach,
   46 Cal. App. 5th 238, 259 ..................................................................................... 24

Apartments Mgmt. v. Jackman,
   257 Va. 256, 260–61, 513 S.E.2d 395, 397 (1999) .............................................. 21

Colonial Van & Storage, Inc. v. Superior Court,
   76 Cal. App. 5th 487, 507–08 (2022) ................................................................... 16

Davis v. Merrill,
133 Va. 69, 74 (1922)…………………………...……………………………..17

Farmers Ins. Grp. v. Cnty. of Santa Clara,
   11 Cal. 4th 992, 1003–1005 (1995) ................................................................ 17, 20

Juarez v. Boy Scouts of America, Inc.,
   81 Cal. App. 4th 377, 395 .................................................................................... 24

Kearney v. Salomon Smith Barney, Inc.,
   39 Cal. 4th 95, 107–08 (2006) ............................................................................. 21

Lisa M. v. Henry Mayo Newhall Memorial Hospital,
   12 Cal. 4th 291, 305 (1995) ................................................................................. 20

Mary M. v. City of Los Angeles,
   54 Cal. 3d 202 (1991) .......................................................................................... 20

Noble v. Sears, Roebuck & Co.,
   33 Cal. App. 3d 654, 656 ...................................................................................... 24

Freeman Mathis
& Gary, LLP
Attorneys at Law

Our Lady of Peace, Inc. v. Morgan,

297 Va. 832 (2019) ................................................................................ 17

Perez v. Van Groningen & Sons, Inc.,

41 Cal. 3d 962, 967 (1986) ..................................................................... 17

Torres v. Parkhouse Tire Service, Inc.,

26 Cal. 4th 995, 1008 (2001) .................................................................. 17

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY WASHINGTON COUNTY SHERIFF'S OFFICE

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## BY WASHINGTON COUNTY SHERIFF'S OFFICE

Defendant, Washington County Sheriff's Office ("WCSO"), by counsel, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (unless otherwise noted, all references to the "Rules" are to the Federal Rules of Civil Procedure, submits this Memorandum of Law in support of its Motion to Dismiss.

### I.  Statement of the Case

This case arises out of the murders of Mark, Sharon, and Brooke Winek and the kidnapping of B.W. by Austin Lee Edwards ("Edwards") on November 25, 2022, in Riverside, California. Edwards was an employee of the WCSO, a sheriff's office located in Washington County, Virginia, at the time. Plaintiffs assert that the WCSO is vicariously liable for Edwards' actions and directly liable for negligently hiring, supervising, and retaining Edwards as an employee.

For the reasons set forth below, this Court cannot adjudicate these claims because it does not have personal jurisdiction over the WCSO. Regardless, Plaintiffs fail to state a claim for relief against the WCSO, and the WCSO should be dismissed from this case.

### II.  Statement of *Alleged* Facts

In February of 2016, Edwards was detained for a psychiatric evaluation after threatening to kill himself and his father. ECF No. 1, ¶ 19–21.[1] As a result, an order was entered in the Bristol General District Court revoking Edwards' right

---

[1] For the purposes of this motion to dismiss only, the Court must assume the allegations in the Complaint are true.  Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). The WCSO does not concede the factual allegations are, in fact, true and correct.

Freeman Mathis
& Gary, LLP
Attorneys at Law

1

to possess a firearm. <u>Id.</u>, ¶¶ 22–23. The order was sent to the Central Criminal Records Exchange. <u>Id.</u>, ¶ 23. According to Plaintiffs, Edwards never petitioned a court to restore his right to buy or possess a firearm. <u>Id.</u>, ¶ 25; <u>see also</u> Va. Code § 18.2-308.1:3.

Approximately six years later, in January 2022, Edwards was hired by the Virginia State Police as a state trooper. ECF No. 1, ¶15. He remained employed with the Virginia State Police until resigning on October 28, 2022. <u>Id.</u>, ¶16. He was hired by the WCSO in November 2022. <u>Id.</u>

At some point prior to November 25, 2022, Edwards began posing as a 17-year-old boy through an online profile he created. <u>Id.</u>, ¶ 28. He exchanged messages with B.W., including romantic messages. <u>Id.</u>, ¶ 29. Then on November 25, 2022, Edwards travelled across the country from Washington County, Virginia to B.W.'s home in Riverside, California. <u>Id.</u>, ¶ 32. Mark and Sharon Winek were at the home, but Brooke Winek and B.W. were not. <u>Id.</u>, ¶¶ 33–34. "Edwards entered the home by falsely claiming that he was a law enforcement officer conducting an investigation" and displayed his badge and service weapon. <u>Id.</u>, ¶ 35. Brooke Winek and B.W. subsequently arrived, and Brooke Winek entered the home while B.W. stayed outside in the car. <u>Id.</u>, ¶ 39. B.W. then went inside the home and discovered that Edwards had murdered Brooke Winek and attempted to murder Mark and Sharon Winek. <u>Id.</u>, ¶ 41. Edwards then set the house on fire and kidnapped B.W. <u>Id.</u>, ¶ 42. Edwards later killed himself during a shootout with San Bernardino County Sheriff's Department deputies. <u>Id.</u>, ¶ 45.

Freeman Mathis
& Gary, LLP
Attorneys at Law

2

## III.  Argument & Authority

### A. The Court Should Dismiss the Washington County Sheriff's Office from this Action for Lack of Personal Jurisdiction.

Pursuant to Rule 12(b)(2), a party may seek dismissal for lack of personal jurisdiction. Once a defendant brings a Rule 12(b)(2) motion, the plaintiff has the burden of demonstrating that personal jurisdiction exists. Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007).

### B. Standard of Review

"There are two limitations on a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process." Sher v. Johnson, 911 F.3d 1357, 1360 (9th Cir. 1990). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, allows courts to exercise personal jurisdiction over defendants to the extent permitted by the due process clause of the United States Constitution, thus jurisdiction is "constrained only by constitutional principles." Sher, 911 F.2d at 1361. "[F]or due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of air play and substantial justice." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." Pebble Beach Co., 453 F.3d at 1154; see also Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015). If a defendant introduces evidence controverting the allegations of the complaint, a plaintiff may not rely on her pleadings but must

Freeman Mathis
& Gary, LLP
Attorneys at Law

3

"come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." <u>Scott v. Breeland</u>, 792 F.2d 925, 927 (9th Cir. 1986) (internal quotations omitted).

There are two forms of personal jurisdiction: general and specific. <u>Picot v. Weston</u>, 780 F.3d 1206, 1211 (9th Cir. 2015).

### C. The WCSO is Not Subject to General Jurisdiction in California.

"General jurisdiction over a non-resident defendant's contacts are continuous and systematic, and the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice." <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 243 F. Supp. 2d 1073, 1083 (C.D. Cal. 2003) (internal quotations omitted). Additionally, "[t]he standard for establishing general jurisdiction is fairly high and requires that defendant's contacts be of the sort that approximate physical presence." <u>Id.</u> at 1083 (internal quotation and citation omitted). When evaluating whether a defendant is subject to general jurisdiction, courts consider several factors, including whether the defendant is incorporated or licensed to do business in the forum state, has offices, property, employees, or bank accounts in the forum state, or pays taxes, advertises or solicits business, or makes sales in the state. <u>Id.</u> at 1083–84.

This Court lacks general jurisdiction over the WCSO because it does not have any proper contacts with California, much less contacts that can be described as "continuous and systematic." <u>Ziegler v. Indian River County</u>, 64 F.3d 470, 473 (9th Cir. 1995). Plaintiffs do not allege any facts bearing on the question of general personal jurisdiction over the WCSO. As set forth in the attached Declaration of Sheriff Blake Andis, the WCSO does not have any contacts with California. **Ex. A**. Specifically, the WCSO:

- Is an office organized pursuant to the Constitution and laws of Virginia;

- Does not pay taxes in California or otherwise do anything to subject itself to the benefits of the laws of California;

- Does not perform services, engage in any operations, or participate in any joint task forces operating in California;

- Does not conduct investigations, electronic surveillance, or other clandestine operations involving California citizens;

- Does not attend conferences or training in California;

- Does not own, lease, or otherwise possess any real or personal property located in California;

- Does not maintain any bank accounts in California; and

- Does not have any employees located in California.

Ex. A, ¶¶ 6–17.

Because Plaintiffs do not allege any facts that the WCSO had any contacts with California, and the uncontroverted evidence demonstrates that the WCSO does not have any contacts with California, this Court lacks general personal jurisdiction over the WCSO.

### D. This Court Does Not Have Specific Personal Jurisdiction Over the WCSO.

Specific jurisdiction lies where the defendant has taken "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1024–25 (2021) (internal quotations omitted). Further, for the court to exercise specific jurisdiction, the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum." Id. at 1025 (internal quotations omitted).

The existence of specific personal jurisdiction over a nonresident defendant depends on three criteria:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (internal quotations omitted). The plaintiff bears the initial burden of satisfying the first two prongs of the test. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted). Failure to satisfy either prong means personal jurisdiction does not exist in the forum state. Id. If the plaintiff satisfies both prongs, however, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." Id. (internal quotations omitted).

Ultimately, regardless of whether the defendant is an individual or an entity, the central determination is whether the plaintiff has sufficiently established that the individual defendant's personal and individual contacts with California justifies the court's exercise of personal jurisdiction over it "i.e., whether [it] is the primary participant or guiding spirit in the alleged wrongdoing intentionally directed at California." Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F. Supp. 743, 751 (C.D. Cal. 1995).

Here, Plaintiffs cannot establish that the WCSO purposefully directed activities toward California, the claim does not arise out of the WCSO's California-related activities, and it would not be reasonable to subject the WCSO to the jurisdiction of California's courts.

**E. The WCSO did not purposefully direct actions towards California.**

Courts "often use the phrase 'purposeful availment' in shorthand fashion, to include purposeful availment and purposeful direction . . . but availment and direction are, in fact, two distinct concepts." <u>Schwarzenegger</u>, 374 F.3d at 802. Generally, the "[p]urposeful availment analysis examines whether the defendant's contacts with the forum are attributable to [its] own actions or are solely the actions of the plaintiff." <u>Sinatra v. Nat'l Enquirer</u>, 854 F.2d 1191, 1195 (9th Cir. 1988). Thus, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum state." <u>Walden v. Fiore</u>, 571 U.S. 277, 284 (2014) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)). This requirement ensures that nonresident defendants "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or third person." <u>Burger King Corp.</u>, 471 U.S. at 475. Therefore, for a court to exercise personal jurisdiction a nonresident defendant, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, [and] (3) causing harm that the defendant knows is likely to be suffered in the forum state." <u>Dole Food Co.</u>, 303 F.3d at 1111.

**F. There has been no intentional act by the WCSO aimed at California.**

To constitute an intentional act, an act must be "one denoting an external manifestation of the actor's will . . . not including any of its results, even the most direct, immediate and intended." <u>Morrill v. Scott Fin. Corp.</u>, 873 F.3d 1136, 1142 (9th Cir. 2017) (internal citation omitted). The Complaint fails to allege any facts as to any intentional act by the WCSO that occurred in California or was aimed at California or a California resident. Rather, all of the alleged acts that occurred in

California were the acts of a separate defendant, Edwards. ECF No. 1, ¶¶ 32–45. Further, the WCSO does not conduct any activities in California, and Edwards had no authorization or reason to do so in his capacity as an employee of the WCSO. Ex. A, ¶¶ 6–17.

### G. The WCSO did not cause any harm that it knew was likely to be suffered in California.

Plaintiffs have not demonstrated that the WCSO's alleged "conduct caused harm that it knew was likely to be suffered in the forum." Int'l Aero Prods., LLC v. Aero Advanced Paint Tech, Inc., 325 F. Supp. 3d 1078, 1085 (C.D. Cal. 2018) (citation omitted). As noted previously, there were no intentional acts by the WCSO. Further, Plaintiffs allege no facts raising any plausible inference that the WCSO could foresee any harm occurring in California.

Plaintiffs fail to allege facts supporting any of the elements of the test for purposeful availment. Therefore, Plaintiffs cannot meet their burden to satisfy the first prong of the specific jurisdiction analysis. Because a plaintiff must satisfy all three criteria for demonstrating personal jurisdiction over each individual defendant, Dole Food Co., 303 F.3d at 1111, this Court lacks personal jurisdiction over the WCSO.

### H. Plaintiffs' claims do not arise out of or relate to any forum-related activities by the WCSO.

Plaintiffs also do not allege any facts satisfying the second requirement for personal jurisdiction: that the claims arose out of the defendant's forum-related activities. The Ninth Circuit employs a "but-for" test to determine whether a claim arises out of a nonresident defendant's activities in the forum. See Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Therefore, Plaintiffs must demonstrate that they would not have suffered a loss "but-for" the WCSO's supposed contact with California. Id. Again, Plaintiffs have not alleged any

Freeman Mathis
& Gary, LLP
Attorneys at Law

activities by the WCSO that occurred in California. As such, Plaintiffs' claims do not arise out of or relate to any forum-related activities by the WCSO, failing the second prong of the specific jurisdiction analysis. Accordingly, Plaintiffs fail to demonstrate that this Court has personal jurisdiction over the WCSO. <u>Dole Food Co.</u>, 303 F.3d at 1111.

## I. The exercise of personal jurisdiction over the WCSO would be unreasonable.

Should the Court even address the third prong of the specific jurisdiction analysis, Plaintiffs do not carry their burden as to that prong either. In short, the exercise of personal jurisdiction over the WCSO would not comport with "fair play and substantial justice." <u>Burger King Corp.</u>, 471 U.S. at 476–77. The Ninth Circuit uses a seven-part test to evaluate this prong of the analysis:

(1) The extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

<u>Dole Food Co.</u>, 303 F.3d at 1114.

Obviously, the first factor weighs in the WCSO's favor for the reasons already explained above. Regardless, even if the WCSO had purposefully directed activities at California—which it did not—"[t]here may be circumstances under which the level of purposeful injection into the forum . . . still weighs against the reasonableness of jurisdiction[.]" <u>Id.</u> at 1114–15. The second factor favors the WCSO as well. The WCSO is a government entity located on the other side of the

9

Freeman Mathis & Gary, LLP
Attorneys at Law

country in Washington County, Virginia. Ex. A, ¶¶ 4–6. If this Court were to exercise jurisdiction over the WCSO, the WCSO would be forced to incur significant costs of travelling to California at taxpayer expense.

The third factor weighs in the WCSO's favor as well because it appears that there is a conflict between the law of California and the law of Virginia as to whether the WCSO is capable of being sued because the WCSO is *"non sui juris"* under Virginia law. <u>See</u> <u>Shannon v. City of Richmond Va. Sheriff's Office</u>, No. 3:22cv460 U.S. 2023 U.S. Dist. LEXIS 55896, *14–15 (E.D. Va. Mar. 30, 2023) (collecting cases); <u>Trantham v. Henry Cnty. Sheriff's Office</u>, No. 4:10cv58, 2011 U.S. Dist. LEXIS 24512, *16–17 (W.D. Va. Mar. 10, 2011) (collecting cases); <u>but see</u> <u>Streit v. County of L.A.</u>, 236 F.3d 552, 565–66 (9th Cir. 2001). The fourth and fifth factors weigh in the WCSO's favor as well because even if the WCSO is dismissed, Plaintiffs may still pursue their claims against the remaining, identified defendant.

As to the sixth factor, while the Plaintiffs' home in California naturally makes a forum in California more convenient to them, "in this circuit, the plaintiff's convenience is not of paramount importance." <u>Dole Food Co.</u>, 303 F.3d at 1116 (citation omitted). Indeed, "[a] mere preference on the part of the plaintiff for its home forum does not affect the balancing." <u>Core-Vent Corp. v. Nobel Industries AB</u>, 11 F.3d 1482, 1490 (9th Cir. 1993); <u>see also</u> <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 624 (9th Cir. 1991) ("[N]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference."). Thus, Plaintiffs' convenience in or preference of litigating in their home state is not of "paramount importance" and does not balance this factor in their favor. Finally, the seventh factor, the availability of an alternative forum, favors the WCSO because an alternative forum exists where the WCSO is subject to personal jurisdiction: the United States District Court for the Western District of Virginia.

Freeman Mathis
& Gary, LLP
Attorneys at Law

10

Accordingly, for the foregoing reasons, this Court lacks personal jurisdiction over the WCSO, and the WCSO should be dismissed from this case.[2]

## IV. This Court Should Dismiss the WCSO for Failure to State a Claim.

To the extent the Court determines that it may exercise jurisdiction over the WCSO, Plaintiffs fail to state a claim against the WCSO under direct or vicarious theories of liability. As such, the WCSO should be dismissed from this action with prejudice.

### A. Standard of Review

A plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must produce an inference of liability strong enough to push the plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 683 (quoting Twombly, 550 U.S. at 570). To meet the plausibility standard, there must be factual content in a complaint that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Thus, pleadings that offer mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" will not suffice. Id. at 678 (quoting Twombly, 550 U.S. at 555). And while the Court must "accept all factual allegations in the complaint as true," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. As such,

---

[2] Alternatively, the Court has discretion to sever the claims against the WCSO under Rule 21 of the Federal Rules of Civil Procedure and transfer those claims to the Western District of Virginia pursuant to 28 U.S.C. § 1404(a).

Freeman Mathis
& Gary, LLP
Attorneys at Law

reviewing a complaint is "a context-specific task" requiring the court to "draw on its judicial experience and common sense" in order to determine whether the "complaint states a plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)).

**B. The WCSO is Not Liable for Edwards' Actions (Second & Third Claims for Relief).**

Plaintiffs seek to hold the WCSO vicariously liable for Edwards' battery of Mark, Sharon, and Brooke Winek and Edwards' alleged violations of the Bane Act. Under the facts alleged, however, the WCSO is not liable for Edwards' actions as they were not taken within the scope of his employment.

**C. Choice of law rules**

As a federal court sitting in diversity, this Court must apply California's choice-of-law rules. Erie R. Co. v. Tompkins, 304 U.S. 64, 78–79 (1938). Under California's "governmental interest" approach to choice-of-law issues, the WCSO does not believe that there is a material difference between California's and Virginia's relevant law on vicarious liability of employers. Compare Colonial Van & Storage, Inc. v. Superior Court, 76 Cal. App. 5th 487, 507–08 (2022) with Our Lady of Peace, Inc. v. Morgan, 297 Va. 832 (2019); Davis v. Merrill, 133 Va. 69, 74 (1922).

**D. Vicarious liability under California law**

In California, an employer can be vicariously liable for an employee's tort only if the tort was committed within "the scope of the employment." Perez v. Van Groningen & Sons, Inc., 41 Cal. 3d 962, 967 (1986). Thus, torts "resulting or arising from the pursuit of the employer's interests" or for "risks inherent in or created by the enterprise" the employer undertakes may create liability for the employer. Farmers Ins. Grp. v. Cnty. of Santa Clara, 11 Cal. 4th 992, 1003–1005 (1995). In essence, the tort must be,

12

Freeman Mathis
& Gary, LLP
Attorneys at Law

> engendered by or arise[ ] from the work, meaning that: (1) the act is
> an outgrowth of the employment, or the risk of tortious injury is
> inherent in the working environment or typical of or broadly
> incidental to the employer's enterprise; or (2) the act is a generally
> foreseeable consequence of the employer's enterprise.

<u>French v. City of Los Angeles</u>, No. EDCV 20-00416, 2022 U.S. Dist. LEXIS 111194, *13 (C.D. Cal. May 10, 2022) (internal quotations omitted); <u>Torres v. Parkhouse Tire Service, Inc.</u>, 26 Cal. 4th 995, 1008 (2001).

If the tortious conduct arises "out of a personal dispute" or does not serve the employer, however, liability will not be imputed to the employer. <u>Farmers</u>, 11 Cal. 4th at 1004–1005. If the employee "substantially deviates from [his] employment duties for personal purposes" such as "inflict[ing] injury out of personal malice or act[ing] out of personal malice unconnected with employment," the employer is not responsible. <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 840 (9th Cir. 1996).

"The free-lance criminal exploits of a law enforcement officer fall within the California Supreme Court's language in <u>Farmers</u>." <u>Id.</u>

**1.      Edwards' actions did not occur in the scope of employment with the WCSO.**

While the scope of employment question is generally a question of fact, it becomes a question of law when "the facts are undisputed and no conflicting inferences are possible." <u>French</u>, 2022 U.S. Dist. LEXIS 111194, *13. Here, taking the allegations in the Complaint as true, Edwards' actions were outside the scope of his employment as a matter of law.

In <u>Reason v. City of Richmond</u>, a City of Richmond, California police officer shot and killed someone after engaging in a personal dispute over a parking space at a gas station. <u>Reason</u>, No. 20-cv-1900, 2021 U.S. Dist. LEXIS 104785, *1 (E.D. Cal. June 3, 2021). The officer pulled a concealed gun out of a

Freeman Mathis
& Gary, LLP
Attorneys at Law

1    waistband, identified himself as a police officer, fired on the decedent, and then

2    coordinated with another jurisdiction's investigators after the shooting by

3    "identifying himself as a Richmond Police Sergeant when calling the police for

4    backup," walking around the crime scene, and taking photographs of the decedent.

5    Id., *14–15. The officer also displayed his badge to deter witnesses from attending

6    to the decedent. Id. at *14. Even though the officer was on administrative leave

7    and outside of his jurisdiction at the time of the shooting, the Reason Court

8    concluded the factual allegations were sufficient to infer that the officer's conduct

9    was within the scope of his employment. Id. at *16.

10        The Reason Court relied, in part, on Bradley v. Cnty. of San Joaquin, No.

11   2:17cv2313, 2018 U.S. Dist. LEXIS 143827 (E.D. Cal. Aug. 23, 2018). In

12   Bradley, a San Joaquin County deputy sheriff shot and fatally wounded a

13   bystander while engaged in an "illicit transaction" in an apartment complex

14   parking lot. Id. at *2. During the transaction, the officer "drew a concealed

15   handgun and declared his status as law enforcement" before commanding various

16   individuals to get down and then opening fire on them and killing the decedent. Id.

17   After the shooting, the officer secured the scene and prevented witnesses from

18   rendering aid to the decedent. Id. San Joaquin County Sheriff's personnel

19   responded and coordinated with the officer in the aftermath of the incident. Id.,

20   *16. Like the officer in Reason, the deputy in Bradley was off duty at the time of

21   the shooting as well. Id., *12–13. The Bradley Court concluded the allegations

22   were sufficient to infer that the deputy's acts were within the scope of his

23   employment as a deputy sheriff and denied San Joaquin County's motion to

24   dismiss.

25        While at first blush these cases might appear to support Plaintiffs' claims,

26   the pervading theme among them is that each case involved a law enforcement

27   officer imparted with authority under the laws of California. Here, based on

28   Plaintiffs' own allegations, Edwards had no purpose for being in California

Freeman Mathis
& Gary, LLP
Attorneys at Law

14

incidental to his employment in any way, shape, or form. To that end, it was not foreseeable to the WCSO that one of its deputies would go on "a frolic of his own" on the other side of the country without any law enforcement objective. That is what distinguishes this case from cases like <u>Bradley</u>, <u>Reason</u>, and <u>French</u>.

According to the Complaint, Edwards initiated a romantic relationship with B.W. over the internet by pretending to be a seventeen-year-old boy. Edwards then left Washington County, Virginia and drove over 2,000 miles across the continental United States not for any law enforcement purpose but in pursuit of B.W. There are no allegations that he left his jurisdiction for any purpose on behalf of his employer. He was not investigating a crime, attempting to contact a witness, or otherwise acting in an on-duty capacity. Instead, his motives were purely personal and ostensibly in pursuit of an illicit tryst.

When he arrived at the Winek's home, Edwards allegedly told the Wineks that he was a law enforcement officer conducting an investigation, showed them his badge, and brandished his service weapon. There is no allegation he was wearing a uniform or announced himself as an employee of the Washington County Sheriff's Office. He then proceeded to murder the Wineks and kidnap B.W. After murdering and kidnapping B.W., Edwards did not call for backup, did not participate in any subsequent investigation, or present himself as a law enforcement officer to anyone else. Instead, he was pursued by San Bernadino County Sheriff's deputies and ultimately died during a shootout.

Under these alleged facts, there can be no dispute that Edwards was not acting within the scope of his employment when he murdered the Wineks, set fire to their home, and kidnapped B.W. Finally, holding the WCSO liable for Edwards' purely personal and sadistic acts would not promote the three policy reasons for imposing vicarious liability. <u>See</u> <u>Farmers</u>, 11 Cal. 4th at 1002, 1016; <u>Lisa M. v. Henry Mayo Newhall Memorial Hospital</u>, 12 Cal. 4th 291, 305 (1995); <u>Mary M. v. City of Los Angeles</u>, 54 Cal. 3d 202 (1991). As such, there is no basis

Freeman Mathis
& Gary, LLP
Attorneys at Law

15

for imputing liability to the WCSO, and Plaintiffs' second and third claims for relief against the WCSO should be dismissed with prejudice.

### 2. Negligent Hiring/Retention/Supervision (Fourth Claim for Relief)

Plaintiffs fail to state a direct liability claim against the WCSO because they fail to allege facts supporting their negligent hiring and retention claims. There are no facts to suggest that the WCSO could not rely on the hiring practices of the Virginia State Police or that there were any incidents during Edwards employment with either the Virginia State Police or the WCSO to put the WCSO on notice of any potential issues with Edwards continued employment. Further, the Court should apply Virginia law to the negligent supervision claim and dismiss it as unsupported by Virginia law.

### 3. Choice of law rules

Under California's "governmental interest" approach to choice-of-law issues, the WCSO does not believe that there is a material difference between California's and Virginia's respective laws on negligent hiring and negligent retention claims. Parkhurst v. Doe, No. 8:23cv884, 2023 U.S. Dist. LEXIS 230311, *11–14 (C.D. Cal. Oct. 16, 2023); A.H. v. Church of God in Christ, Inc., 297 Va. 604, 629 (2019); See. Apartments Mgmt. v. Jackman, 257 Va. 256, 260–61, 513 S.E.2d 395, 397 (1999).

The same is not true for the negligent supervision claim.

California's "governmental interest" test for choice of law issues follows a three-step analysis:

> "First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine

16

Freeman Mathis
& Gary, LLP
Attorneys at Law

whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state,' and then ultimately applies 'the law of the state whose interest would be the more impaired if its law were not applied.'"

Gurvey v. Legend Films, Inc., No. 09-cv-942, 2010 U.S. Dist. LEXIS 444, *42 (S.D. Cal. Jan. 4, 2010) (quoting Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107–08 (2006)).

Here, there is a dispute between the laws of Virginia and California because Virginia does not recognize a claim for negligent supervision or negligent training. A.H., 297 Va. at 630; McDonald v. Betsinger, No. 7:15cv477, 2016 U.S. Dist. LEXIS 29139, *10 (W.D. Va. Mar. 8, 2016) (collecting cases). Thus, not only are the laws of the affected jurisdictions different, but there is a "true conflict" between the laws of the two jurisdictions.

As to the third factor, Virginia's interest would be more impaired than California's if its law and policy were subordinated to the policy of California because applying the policy of California would impose a duty that does not exist under Virginia law on Virginia governmental employers without any interstate contacts. Moreover, to the extent they can assert viable claims, Plaintiffs are not without potential remedies, as claims for negligent hiring and negligent retention are viable under both states' laws. Accordingly, for purposes of the negligent supervision claim, the Court should apply the law of Virginia and dismiss the negligent supervision claim with prejudice.

### 4.   Plaintiffs fail to state a claim for negligent hiring.

"Under a theory of negligent hiring, an employer may [be] negligent if it had reason to know the employee, because of [his] qualities, is likely to harm

17

Freeman Mathis
& Gary, LLP
Attorneys at Law

other[s] in view of the work or instrumentalities entrusted to her." <u>Parkhurst</u>, 2023 U.S. Dist. LEXIS 230311, *11–12 (citation omitted). The basis of liability for negligent hiring is that "the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." <u>Id.</u> at *12 (internal quotations omitted).

Here, Plaintiffs contend the WCSO was negligent in hiring Edwards because of its failure to conduct a background check that should have discovered Edwards' revocation of his Second Amendment rights. Plaintiffs' claim fails, however, because Plaintiffs affirmatively allege that the revocation of Edwards' rights occurred years prior to his employment as a trooper for the Virginia State Police. The Virginia State Police hired Edwards *before* the WCSO did. Plaintiffs then allege that Edwards applied for a position with the WCSO while still employed with the Virginia State Police. As a matter of law, it is neither unreasonable nor negligent for the WCSO to rely on the verification processes of the Virginia State Police in hiring Edwards. Plaintiffs do not allege that Edwards received any discipline while working for the Virginia State Police or that he was forced to resign from the Virginia State Police. And Plaintiffs allege no other facts that would suggest that the WCSO should have reason to believe that Edwards posed an undue risk of harm at the time of his hiring.

Accordingly, Plaintiffs fail to state a claim for negligent hiring.

### 5. Plaintiffs fail to state a claim for negligent retention.

"Although similar to negligent hiring, a negligent retention claim centers on harm caused to a third party by an employee as a result of the employer's negligent retention of that employee." <u>Parkhurst</u>, 2023 U.S. Dist. LEXIS 230311, *13. The key distinction between a negligent hiring claim and a negligent retention claim is timing: the former depends on knowledge of unfitness prior to hiring; the latter depends on knowledge of unfitness learned during the course of employment. <u>Id.</u>

Freeman Mathis
& Gary, LLP
Attorneys at Law

Plaintiffs' negligent retention claim fails because Plaintiffs do not allege that the WCSO became aware of any facts in the few short weeks after hiring Edwards that he was unfit or otherwise posed a risk of harm to third parties. They do not allege that there were any complaints made about Edwards or that he received any discipline or reprimands while employed with the WCSO. Accordingly, Plaintiffs fail to state a claim for negligent retention.

### 6.    If the Court applies California law, Plaintiffs fail to state a claim for negligent supervision.

Even if the Court applies California law, Plaintiffs fail to state a claim for negligent supervision for almost the same reasons they fail to state a claim for negligent hiring or negligent retention.

Under California law, "[a]n employer can be held liable for negligent supervision if it knows or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness." Alexander v. Cmty. Hosp. of Long Beach, 46 Cal. App. 5th 238, 259 (Cal. Ct. App. 2020). "[T]here can be no liability for negligent supervision 'in the absence of the knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised.'" Juarez v. Boy Scouts of America, Inc., 81 Cal. App. 4th 377, 395 (Cal. Ct. App. 2000) (quoting Noble v. Sears, Roebuck & Co., 33 Cal. App. 3d 654, 656 (Cal. Ct. App. 1973)).

Here, the negligent supervision claim appears to hinge on the same allegations as the negligent hiring claim: the WCSO's alleged failure to conduct a background check on Edwards. But as noted above, Edwards was employed as a Virginia State Trooper at the time he applied to work with the WCSO, and there are no allegations of any conduct or behavior during Edwards' employment with the Virginia State Police to suggest the WCSO had or should have had any knowledge that Edwards "could not be trusted to act properly without being supervised." Nor are there any allegations that Edwards' conduct during his

Freeman Mathis
& Gary, LLP
Attorneys at Law

employment with the WCSO should have alerted the WCSO that Edwards could not be trusted to act properly. Finally, Edwards' actions described in the Complaint were not part of any sanctioned activity on behalf of the WCSO. Edwards was not performing any type of investigation or law enforcement purpose when he left Virginia and travelled across the country to California.

Accordingly, while the Court should not apply California law to Plaintiffs' negligent supervision claim, Plaintiffs fail to state a claim for negligent supervision, nonetheless.

## V. Conclusion

For the foregoing reasons, defendant the Washington County Sheriff's Office respectfully urges the Court grant the motion and dismiss it from this case for lack of personal. Alternatively, defendant the Washington County Sheriff's Office respectfully urge the Court to dismiss from this case with prejudice for failure to state a claim.

Respectfully submitted,

 _/s/___**JOHN K. RUBINER**_____

John K. Rubiner (State Bar No. 155208)
Freeman Mathis & Gary, LLP


Nathan H. Schnetzler (*pro hac vice*)
FRITH ANDERSON + PEAKE, P.C.

*Counsel for Washington County Sheriff's Office*

Freeman Mathis
& Gary, LLP
Attorneys at Law

## CERTIFICATE OF COMPLIANCE WITH SECTION VII.D OF COURT'S STANDING ORDER AND LOCAL RULE 11-6

The undersigned, counsel of record for Washington County Sheriff's Office, certifies that this brief contains less than 7,000 words, excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by Local Rule 11-6.2, and any indices and exhibits, which complies with the word limit of Local Rule 11.6.1 and Section VII.D. of this Court's Standing Order concerning Civil Cases.

**January 9, 2024**

*/s/*      **JOHN K. RUBINER**
John K. Rubiner (State Bar No. 155208)
Freeman Mathis & Gary, LLP
550 S. Hope Street, Suite 2200
Los Angeles, CA 90071-2627
Phone:              213-615-7000
Fax:          833-264-2083
Email:              jrubiner@fmglaw.com

Nathan H. Schnetzler (*pro hac vice*)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone:              (540) 772-4600
Fax:          (540) 772-9167
Email:              nschnetzler@faplawfirm.com

*Counsel for Washington County Sheriff's Office*

Freeman Mathis
& Gary, LLP
Attorneys at Law

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on January 9, 2024 I electronically filed the foregoing

3

with the Clerk of the Court using the CM/ECF system, which will automatically

4

send notification of such filing to counsel of record.

5

6

7

   ***/s/  JOHN K. RUBINER***_____

8

John K. Rubiner (State Bar No. 155208)
Freeman Mathis & Gary, LLP

9

550 S. Hope Street, Suite 2200

10

Los Angeles, CA 90071-2627
Phone:      213-615-7000

11

Fax:        833-264-2083

12

Email:      jrubiner@fmglaw.com

13

Nathan H. Schnetzler (*pro hac vice*)

14

FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW

15

P.O. Box 1240

16

Roanoke, Virginia 24006-1240
Phone:     (540) 772-4600

17

Fax:       (540) 772-9167
Email:     nschnetzler@faplawfirm.com

18

19

*Counsel for Washington County Sheriff's Office*

20

21

22

23

24

25

26

27

28

Freeman Mathis
& Gary, LLP
Attorneys at Law

22